UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CIV-21031-SCOLA
MAGISTRATE JUDGE P.A. WHITE

STEVEN MACIEJKA,                    :

            Plaintiff,              :        REPORT OF
                                             MAGISTRATE JUDGE
v.                                  :            (DE#66)

JABARIA WILLIAMS,                   :

            Defendants.             :
_____

Introduction

The plaintiff Steven Maciejka has filed a second amended civil
rights complaint, raising claims under to 42 U.S.C. §1983 (DE#65).
This cause is presently before the Court upon Defendants' Diaz,
Martin and Williams' Motion to Dismiss (DE#66).

This case effectively began in March of 2014, when Plaintiff
sued Alba Diaz, Director of Chaplaincy Services, Assistant Warden
Williams, Major Martin, Lt. Henderson, and Officers Wilcox and
Grubin, all of Dade CI.  See Maciejka v. Diaz, 14-Civ-20774-Huck.[1]
In that case, Plaintiff later added the Florida Department of
Corrections, and repeatedly amended his complaint.  (See Id.).
Specifically, Plaintiff filed on original complaint, and then three
amendments.  (See Id.).  Then, after a year of litigation,
Plaintiff voluntarily dismissed his case, claiming that prison
conditions prevented him from litigating it properly.  (See Id.).

_____

[1] The court may take judicial notice of information available on its own
docket. See Fed.R.Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th
Cir.1980) ("The doctrine of judicial notice permits a judge to consider a
generally accepted or readily verified fact as proved without requiring
evidence to establish it."); United States v. Rey, 811 F.2d 1453, 1457 n.5
(11th Cir. 1987) ("A court may take judicial notice of its own records and the
records of inferior courts.").

After his release from prison, Plaintiff re-instituted this suit, naming again the above-referenced defendants, and this time adding Grievance Coordinator Coronado, Law Librarian Jane Doe #1, Sgt. Doe #2, Director Doe #3, FDOC Grievance Secretary Stine, and Sgt. Lee. (DE#1). The thrust of Plaintiff's claims were that the defendants violated his constitutional rights by interfering with this right to practice his religion, failed to properly process and respond to his grievances, retaliated against him, harassed him, and denied him access to courts. (See Id.).

Certain served defendants then moved to dismiss Plaintiff's original complaint in this case. (DE#39). Pertinent here, the defendants argued that the original complaint violated the rules of pleading, insofar as it did not contain a "short and plain statement" of Plaintiff's claims, and also failed to articulate the claims with sufficient clarity to allow the defendants to frame a responsive pleading. (Id.). Defendants further noted that, although the complaint consisted of numbered paragraphs, the paragraphs were not limited to a single set of facts, and the complaint was replete with conclusory allegations. (Id.).

The undersigned agreed with the defendants that Plaintiff's complaint bore all the indicia of an impermissible "shotgun" pleading. (See DE#56). The undersigned further noted that, not only would it be virtually impossible for the defendants to formulate a response, but that Plaintiff's complaint, as pled, would require the Court to sift through rambling, repetitive, and conclusory allegations in an attempt to determine whether had stated a claim. (Id.).

Plaintiff, for his part, did not dispute that his complaint violated the rules of pleading. (See DE#45). The undersigned thus recommended that defendants' motion to dismiss be granted, and that Plaintiff be allowed an opportunity to amend his complaint. (DE#56). In so doing the Court set forth in painstaking detail the

2

rules of pleading and applicable legal standards regarding what constitutes an impermissible "shotgun" pleading. (<u>See</u> DE#56). The Court also set forth in detail the legal standards for all the claims that, as best the Court could discern, Plaintiff was attempting to raise. (<u>See</u> <u>Id.</u>).

While the above-referenced report was pending, Plaintiff filed an amended complaint (DE#60). Thereafter, the district judge adopted the undersigned's report recommending that Plaintiff's complaint be dismissed without prejudice, and further ordered that Plaintiff comply with the rules of pleading by providing a "short and plain" statement of his claims. (DE#58). The order further required Plaintiff to file a stand-alone amended complaint and not append documents containing either repetitive or additional allegations, and not to refer to or incorporate by reference facts alleged or claims made in his previous filings. (<u>Id.</u>).

Subsequently, the undersigned then clarified that, if Plaintiff did not file an amended complaint by the date set by the district judge is his order, that the undersigned would assume that Plaintiff intended to stand on the amended complaint he had filed while the report was pending. (DE#61).

Finally, after the undersigned entered the above-referenced order of clarification (DE#61), Plaintiff filed a second amended complaint (DE#65), and appended the previous amended complaint that he had filed while the undersigned's report was pending (DE#60).

<u>Claims</u>[2]

Plaintiff sues Director of Chaplaincy Services Alba Diaz, Major of Security Rachelle Martin, and Assistant Warden Jabria Williams, all of Dade Correctional Institution.

Plaintiff alleges that, from February 2011 through April 2015, he received inpatient mental health treatment in the Transitional Care Unit (TCU) at Dade Correctional Institution and Zephyrhills Correctional Institution. Plaintiff alleges that he has a learning disability, Schizoaffective Disorder, anxiety and depression. He further alleges that he was baptized and raised Catholic, and that his beliefs compel him to receive confession and communion on a weekly basis.

Plaintiff alleges that he received permission from the Multidisciplinary Team (MDST) in the summer of 2011 to attend Catholic services and fellowship in the prison chapel weekly. Plaintiff alleges that, because there was no chaplain conducting any services in the TCU, inmates were required to be escorted by security to the chapel. Plaintiff further alleges that Chaplain Diaz informed Plaintiff in 2012 that Plaintiff was on a weekly callout to attend his services. Plaintiff alleges, however, that from April 2012 - April 2015, he was unable to attend group worship, attend religious services, celebrate ceratin religious holidays, obtain spiritual advice, constantly maintain ownership of

_____

[2]As set forth above, Plaintiff has been repeatedly advised that an amended complaint supersedes any previous complaints, and that any facts alleged or claims that are not re-pled in an amended complaint will therefore be deemed abandoned. Moreover, as also set forth above, Plaintiff has been specifically ordered to file a stand-alone amended complaint and not attach documents repeating or making additional allegations. And as further set forth above, he has also been ordered not to make reference to previous filings, or incorporate them by reference. Therefore, the Court will only consider the allegations made and claims raised in Plaintiff's second amended complaint (DE#65), and not any of the allegations made or claims raised in his previous amended complaint (DE#60), which he has appended. Moreover, because Plaintiff's second amended complaint is again replete with repetitive and conclusory allegations, the Court will omit those as well.

religious materials and publications, and secure religious property such as Rosary and Scapular.

With regard to Chaplain Diaz, Plaintiff first makes a variety of vague allegations about how Chaplain Diaz prevented him from exercising his religious beliefs (DE#65, ¶7), and equally vague allegations about unspecified grievances resulting in loss of unspecified privileges, because of an alleged vague lack of policy (Id. at ¶8).

Plaintiff then alleges that he missed religious services from 2011-2014, despite receiving assurances from Diaz. (Id. at ¶9). He further alleges that Diaz could see through her window that Plaintiff was not being taken to services, yet did not coordinate with security per policy. (Id. at ¶10). Plaintiff further alleges that Diaz failed to visit the TCU weekly as required, and refused to give Plaintiff a copy of a memo to security to present to TCU staff so that he could attend services. (Id. at ¶11). Plaintiff alleges that, as a result of this conduct, he missed and continued to miss religious services. (Id. at ¶¶10, 11). Plaintiff further alleges that Diaz intentionally withheld his name from the chapel callout so that security staff would take him to services because Plaintiff had filed complaints against Diaz. (Id. at ¶12). Plaintiff goes on to allege that Diaz did not replace the regular chaplain in the TCU, and that Diaz denied his request to attend an Ash Wednesday service on the basis that no priest was scheduled to come, when one did in fact visit. (Id. at ¶13). Plaintiff also asserts that Diaz did not allow him to attend a baptism that Plaintiff requested to see. (Id. at ¶14).

Plaintiff also alleges that there was a variety of printed religious material available on several tables in the chapel that inmates were free to take, but that Diaz took Plaintiff's away on the basis that he was not allowed to have it while he was assigned to the TCU, even though Diaz knew that Plaintiff was stip searched

5

each time he returned from the chapel per policy.  (<u>Id.</u> at ¶15).
Plaintiff further alleges that on one occasion a volunteer brought
him a monthly religious newspaper to Plaintiff and other inmates,
but that Diaz took Plaintiff's copy away, and that Plaintiff tried
to obtain other religious materials, but hat his requests were
denied by Williams and Diaz.  (<u>Id.</u> at ¶15).

Plaintiff further alleges that Diaz told staff that Plaintiff
refused to attend services and would then require staff to take
Plaintiff late, and that when Plaintiff refused to accept this *de
facto* policy of taking him late, Diaz threatened in front of staff
to punish Plaintiff is he continued to complain.  (<u>Id.</u> at ¶16).
Plaintiff also details a specific alleged incident wherein another
inmate asked Diaz if Plaintiff could received a religious newspaper
that was being distributed, and Diaz yelled at the inmate and
Plaintiff that Plaintiff was not to receive anything from anyone.
(<u>Id.</u> at ¶17).

With regard to Major Martin, Plaintiff alleges that she was in
control of the TCU, that all of her staff was required to report to
her daily, including in inmate's request to attend religious
services and preparing escorts in advance.  (<u>Id.</u> at ¶19).
Plaintiff further alleges that Martin's staff was not adequately
trained in mental health, and that she failed to ensure their
training.  (<u>Id.</u> at ¶19).

Plaintiff alleges that Martin instructed her staff to take
Plaintiff to services, and said she would look into Plaintiff's
situation.  (<u>Id.</u> at ¶20).  Plaintiff further alleges that Martin
knew for a number of years through visits and grievances of
Plaintiff's efforts to attend services, yet turned a "blind-eye"
approach, and allowed her subordinates to continue to fail to take
Plaintiff to services, with the intention of denying Plaintiff
access.  (<u>Id.</u> at ¶20).  Plaintiff then makes a variety of vague
allegations about Martin denying Plaintiff meaningful access to

6

religious services when he filed grievances against her or her staff, alleges that Martin denied his grievances, and alleges that there was little or no evidence from Martin (presumably in her responses) to indicate a security interest in preventing Plaintiff from performing religious exercises. (Id. at ¶21).

Plaintiff also alleges that, in retaliation for Plaintiff filing grievances against her, Martin ordered Plaintiff to be placed in handcuffs during services so he could not worship with his hands and received communion. (Id. at ¶22). Plaintiff further alleges that Martin told him that he was not in punitive confinement at the time, that it is not policy for inmates to attend services in handcuffs while they are not on punitive conditions, and that the handcuffs did not advance any penal goal since there was no increased security risk. (Id. at ¶22).

Plaintiff also alleges that his Rosary was seized at Martin's order, and that he never received it back after being discharged from TCU. (Id. at ¶23). He also alleges that his Sony earbuds were also confiscated so that Plaintiff could not listen to services, that Martin had Plaintiff's Rosary and earbuds in retaliation for filing grievances against her, and that he was denied due process when his earbuds were confiscated. (Id. at ¶23).

With regard to Assistant Warden Williams, Plaintiff alleges that this defendant's duties included supervising Diaz and Martin, and making sure they followed department rules. (Id. at ¶24). Plaintiff alleges that Williams learned through personal visits and grievances that Plaintiff was not being taken to services, that when Williams denied Plaintiff's grievances this defendant was essentially participating in his subordinate's decisions, and that this defendants was personally involved in looking into the situation as stated in grievance responses. (Id. at ¶24). Plaintiff also alleges that Williams met regularly with Martin to

discuss security measures, including the escort of inmates to the chapel for worship, and that Williams knew that there was no longer a regular chaplain in the TCU.  (Id. at ¶24).  Plaintiff also makes a vague allegation about Williams denying Plaintiff access to religious services for filing complaints.  (Id. at ¶24).

Plaintiff also alleges that he told Williams, Martin and Diaz that he didn't forfeit his right to practice his religious beliefs while in the TCU, and that Williams did not follow through with allowing Plaintiff to attend religious services.  (Id. at ¶25).  Plaintiff further alleges that Williams retaliated against him by ignoring Plaintiff's oral requests to attend chapel services while Williams was conducting security rounds. (Id. at ¶25).  Plaintiff also alleges that Williams was responsible for posting the chaplaincy calendars and providing escorts, and then makes vague allegations about staff "relaxing and snoozing" in the control room, and Williams approving a security tint that decreased inward visibility by inmates into the control station after Plaintiff's requests to attend religious services.  (Id. at ¶26).

Plaintiff alleges that a law clerk was supposed to visit the TCU twice per week, but was only scheduled once, and that it conflicted with the time of Plaintiff's religious services.  (Id. at ¶27).  Plaintiff further alleges that Williams told Plaintiff to choose between seeing the law clerk or attending religious services.  (Id. at ¶27).  Plaintiff alleges that he opted to go to services.  (Id. at ¶27).  Plaintiff further alleges that Williams knew that, as a result, Plaintiff missed deadlines in his previous case that was pending in this court at the time, because he was a defendant to that case.  (Id. at ¶27).

With regard to all three defendants, Plaintiff alleges that Diaz recommended to the MDST that Plaintiff not attend any services, and conspired with Williams to deny Plaintiff access to the chapel and receive pastoral visits in his cell from 1/15/14 to

8

7/30/14 for filing complaints against them. (Id. at ¶28). Plaintiff also alleges that, when he was released from confinement, Diaz, Williams and Martin conspired to deny Plaintiff's requests to attend services to receive pastoral visits in his cell and created a 30-day wait policy. (Id. at ¶29). Plaintiff further alleges that there was no such rule, and that Plaintiff later learned that the rule was created by Diaz in retaliation for Plaintiff filing grievances against her. (Id. at ¶29).

Plaintiff also alleges that there was a spiritual retreat scheduled, and that Diaz did not respond to two (2) of Plaintiff's requests to attend. (Id. at ¶30). Plaintiff further alleges that he was then told he needed MDST approval, and that Diaz, Williams and Martin denied it, stating that the retreat was not "in tenet" with Plaintiff's religion on file. (Id. at ¶30). Plaintiff further alleges that the posting said "Catolico," which translates into "Catholic," Plaintiff's religion on file. (Id. at ¶30).

Plaintiff alleges that, on April 29, 2014, he was moved from the confinement dorm to J-dorm, and requested to attend services again. (Id. at ¶31). Plaintiff further alleges that he was told that he had to demonstrate 30-days of good behavior, that he could not locate any such policy, and that inmates are not allowed to attend services immediately upon release. (Id. at ¶31).

Plaintiff further alleges that wearing the Rosary and Scapular are central to his religious beliefs, and that Williams, Martin and Diaz knew it was policy to permit Plaintiff to wear it. (Id. at ¶32, 33). Plaintiff alleges that Martin nevertheless ordered her staff to seize Plaintiff's Rosary, and that Williams, Martin, and Diaz conspired to withhold this from Plaintiff because he filed grievances. (Id. at ¶32, 33). Plaintiff alleges that Williams, Martin and Diaz used their authority to influence the MDST to deny Plaintiff his Rosary and Scapular. (Id. at ¶35).

9

Plaintiff also alleges that Diaz was responsible for creating and posting the monthly Chaplaincy calendar.  (<u>Id.</u> at ¶36).  He further alleges that Martin was aware that Diaz did not post the calendars.  (<u>Id.</u> at ¶36).  Plaintiff also again alleges that Williams was aware of this issue through personal visits and grievances.  (<u>Id.</u> at ¶36).  According to Plaintiff, Williams, Martin, and Diaz knew it was policy to post an updated calendar, and that often months would go by without updated calendars.  (<u>Id.</u> at ¶36).  Plaintiff further alleges that he missed numerous opportunities to practice his religion as a result (<u>Id.</u> at ¶36), and then goes on to detail a number of occasions when calendars were not posted.  (<u>Id.</u> at ¶¶37, 38).  Plaintiff then alleges that the punishment for filing grievances and complaints (presumably regarding the calendar postings) took a myriad of vague forms, and alleges that Diaz even created a "punishment seat" for Plaintiff to sit with her during services, furthest away from everyone else and the alter.  (<u>Id.</u> at ¶39).

Plaintiff then closes with an allegation that "they" (presumably Williams, Martin and Diaz) communicated Plaintiff's "issues" with each other, and had knowledge of the wrongs "conspired to be done."  (<u>Id.</u> at ¶40).

Plaintiff also includes a section wherein he alleges that he was not provided uniforms on a regular basis per policy, and that uniforms were "under the control" of Williams and Martin.  (<u>Id.</u> at ¶41).  Plaintiff further alleges that Williams and Martin knew from visiting TCU that Plaintiff's uniforms were soiled, and that this "allowed" Williams and Martin to not take Plaintiff to some services because they knew Plaintiff's clothes smelled and affected other inmates at chapel services.  (<u>Id.</u> at ¶41).  Plaintiff then alleges that "the conspiracy was motivated by evil intent," and that Plaintiff only began receiving regular uniform changes after Plaintiff incurred a $425 court fee.  (<u>Id.</u> at ¶41).

Plaintiff then closes with a section alleging what the Florida Department of Corrections grievance procedures are (Id. at ¶¶42, 44), and alleges that he sent grievances to various officials. (Id. at ¶43). Plaintiff goes on to allege that his grievances were forwarded to Williams, Martin and Diaz, who were responsible for screening them (Id. at ¶43), makes vague allegations about grievances that were filed regarding various topics, alleges that he filed a total of 70 grievances, but that 24 of these were not returned. (Id. at ¶45). Plaintiff also alleges that he placed his grievances in a lock box, but that they were screened by Williams, Martin and Diaz. (Id. at ¶46). He also alleges that "these superiors" (presumably Williams, Martin and Diaz) knew his complaints and didn't follow through, resulting in a never-ending cycle of grievances saying yes, but with no action. (Id. at ¶46).

Based on these allegations, Plaintiff states that he suffered mental and emotional injury. (Id. at ¶47). He seeks nominal damages, punitive damages, compensatory damages, and "presumed" damages as an alternative to his requests for punitive and compensatory damages. (Id., p.17). Plaintiff requests a jury trial, ans seeks his costs in this suit, as well as any other relief the Court deems just and proper. (Id.). He also seeks his costs in the "uniform case."

## Discussion

*Defendants Motion to Dismiss*

Defendants argue that Plaintiff's complaint should be dismissed for lack of prosecution, and for failure to comply with the rules of pleading in violation of this Court's order. Specifically, Defendants argue that, although Plaintiff mailed his the operative second amended complaint on January 9, 2018 (DE#65), it was not received by the Court until January 12, 2018, two (2) days after the January 10, 2018 deadline for Plaintiff to file a

11

second amended complaint (See DE#61).[3]  Defendants further argue
that Plaintiff's second amended complaint does not provide a "short
and plain" statement of his claims, as required by the Rule of
Civil Procedure, and this Court's order.  Rather, Defendants argue,
the second amended complaint is so riddled with legal conclusions
and infirm statements of fact that they cannot formulate a
response.   Moreover, Defendants argue that, at this point,
Plaintiff should know how to plead a claim, and that his violation
of the rules of pleading is thus willful.  According to Defendants,
dismissal with prejudice is therefore warranted.

The Eleventh Circuit has commented that "[a] district court
has inherent authority to manage its own docket 'so as to achieve
the orderly and expeditious disposition of cases.'" Equity
Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556
F.3d 1232, 1240 (11th Cir. 2009)(quoting Chambers v. NASCO, Inc.,
501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Such
authority includes the power to dismiss a case for failure to
prosecute or failure to comply with a court order. Id. (citing
Fed.R.Civ.P. 41(b)); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.
1989)(dismissal of an action for failure to comply with court order
is permitted under Fed.Rule Civ.Proc. 41(b); see also Link v.
Wabash R. R., 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734
(1962)(interpreting Rule 41(b) not to restrict the court's inherent
authority to dismiss sua sponte an action for lack of prosecution);
Hyler v. Reynolds Metal Co., 434 F.2d 1064, 1065 (5th Cir.

---

[3] The Court's order (DE#61) set January 10, 2018 as the deadline for
Plaintiff to file his second amended complaint.  Since Plaintiff is out of
custody, he is not entitled to the benefit of the "prison mailbox rule."  See
Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)(The
"prison mailbox rule" provides that a prisoner's documents are deemed filed at
the moment the prisoner delivers them to prison authorities for forwarding to
a court clerk.)

1970)("It is well settled that a district court has inherent power to dismiss a case for failure to prosecute....").[4]

The test for determining the appropriateness of dismissal is whether there is "a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir.1985). "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." Moon, 863 F.2d at 837 (citations omitted). Furthermore, the severe sanction of dismissal with prejudice, or the equivalent thereof, may be imposed if there is a clear record of delay or "contumacious conduct" by the plaintiff. McKelvey v. AT & T Techs., Inc., 789 F.2d 1518, 1520 (11th Cir. 1986)(citations omitted). "A finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of willful delay; simple negligence does not warrant dismissal." Id.; see also Jones v. Graham, 709 F.2d 1457, 1462 (11th Cir.1983) (failing to comply with court order and local rules and clear record of delay demonstrating lack of prosecution warranted dismissal with prejudice); McIntosh v. Gauthier, 182 F. App'x 884, 887 (11th Cir. 2006)(dismissal with prejudice appropriate where Magistrate Judge afforded litigant numerous opportunities to prosecute the case and comply with court orders, gave explicit instructions regarding what to file, and made litigant aware that the consequence of noncompliance would be dismissal of his case).

Here, while it is true that Plaintiff technically filed his complaint two days late, the Court does not find that sufficient to establish willful delay on Plaintiff's part at this juncture.

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Moreover, while Plaintiff's second amended complaint is still fairly rambling and vague as to some of the facts alleged, Plaintiff is <u>pro se</u>, and review of the various versions of his complaints reveals that he has, albeit with less than ideal precision, attempted to refine his claims. The Court thus further finds that the fact that Plaintiff's latest attempt to plead his claims is not a model of organization is similarly not sufficient to establish that Plaintiff has willfully violated the rules of pleading, or this Court's order. And finally, although Plaintiff's second amended complaint certainly could have been better drafted, the Court disagrees with Defendants that they can not formulate a responsive pleading.

*Screening of Whether Plaintiff States a Claim*

        Although Plaintiff's complaint is not subject to dismissal on the grounds asserted in Defendants' motion to dismiss for the reasons stated above, it is nevertheless appropriate for the Court to screen the complaint, because Plaintiff seeks redress from a government entity or officer or employee of a governmental entity. Specifically, 28 U.S.C. §1915A of the Prison Litigation Reform Act provides:

> (a) Screening.--The court shall review . . . redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. §1915A(a), (b).

A complaint is frivolous under the PLRA "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1979)(quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the plaintiff does not plead facts that do not state a claim to relief that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)(retiring the oft-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line

from conceivable to plausible, their complaint must be dismissed" for failure to state a claim); Watts v. FIU, 495 F.3d 1289 (11th Cir. 2007).  While a complaint attacked for failure to state a claim upon which relief can be granted does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65.  The rules of pleading do "not require heightened fact pleading of specifics . . . ." The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(quoting Twombly, 127 S.Ct. at 1964). When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred.[5]

*General Standard for § 1983 Claims*

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that the defendant acted under color of state law, and (2) that the plaintiff suffered the deprivation of a constitutional right as a result of that action.  See, e.g., Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961); Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir.2005); Bryant v. Maffucci, 923 F.2d 979, 983-84 (2d Cir.1991). The second element of a § 1983 action, whether a plaintiff suffered the deprivation of a constitutional right as a result of the actions of the defendant(s), will vary depending on the nature

---

[5]Application of the Twombly standard was clarified in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

of the federal right allegedly infringed.  Moreover, the Eleventh
Circuit "'requires proof of an affirmative causal connection
between the official's acts or omissions and the alleged
constitutional deprivation' in §1983 cases." Rodriguez v.
Secretary, Department of Corr., 508 F.3d 611, 625 (11th Cir.
2007)(quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir.
1986)).  Thus, a plaintiff must show that the defendant's actions
actually and proximately caused a deprivation of constitutional
rights. See Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir. 2000)
(a plaintiff asserting a § 1983 "constitutional tort" claim must
meet the same standard of causation required in a common law tort
claim); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)
(§ 1983 "plainly requires proof of an affirmative causal connection
between the actions taken by a particular person 'under color of
state law' and the constitutional deprivation").

     More than conclusory and vague allegations are required to
state a cause of action under 42 U.S.C. §1983. See L.S.T., Inc. v.
Crow, 49 F.3d 679, 684 (11th Cir. 1995)(per curiam); Fullman v.
Graddick, 739 F.2d 553, 556–57 (11th Cir. 1984).  In addition, it
is well-settled that "supervisory officials are not liable under §
1983 for the unconstitutional acts of their subordinates on the
basis of respondeat superior or vicarious liability." Miller v.
King, 84 F.3d 1248, 1261 (11th Cir.2004).  Rather, such liability
attaches under § 1983 only "when the supervisor personally
participates in the alleged unconstitutional conduct or when there
is a causal connection between the actions of a supervising
official and the alleged constitutional deprivation." Id.  "A
causal connection may be established: (1) when a history of
widespread abuse puts the responsible supervisor on notice of the
need to correct the alleged deprivation, and he [or she] fails to
do so; (2) when a supervisor's custom or policy results in
deliberate indifference to constitutional rights; or (3) when facts

17

support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Miller</u>, 384 F.3d at 1261 (internal quotations omitted).

*First Amendment Free Exercise*

The First Amendment of the United States Constitution prohibits prison officials from imposing a substantial burden on the free exercise of an inmate's "sincerely held" religious belief unless their actions or restrictions are "reasonably related to legitimate penological interests.'" <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348-53 (1987). Thus, to state a claim under either provision, a prisoner must demonstrate that Defendants are imposing a substantial burden on the free exercise his religious beliefs such that "under the restrictions imposed" he is essentially "deprived of all means "of practicing his "religion." <u>See</u> <u>McCorkle v. Johnson</u>, 881 F.2d 993, 996 (11th Cir. 1989). However, prisoners' constitutional rights are subject to restrictions and limitations, and the Court must allow wide-ranging deference to prison administrators in the adoption of policies judged necessary to preserve internal order, discipline and security. <u>Bell v. Wolfish</u>, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

In order to evaluate whether a prisoner's constitutionally-protected right to the free exercise of religion has been infringed, the Court must make two primary inquiries: (1) Is the plaintiff sincere in his asserted religious beliefs; and (2) If the plaintiff is sincere, and the regulation impinges on Plaintiff's free exercise of his religion, is the regulation reasonably related to legitimate penological interests. <u>Martinelli v. Dugger</u>, 817 F.2d 1499, 1503 (11th Cir.1987); <u>Turner v. Safley</u>, 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Whether

18

a restriction is reasonable, in turn, requires consideration of the following factors:  (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, (2) whether there are alternative means of exercising the right that remains open to prison inmates, (3) the impact accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources, and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* costs to valid penological interests.  Turner v. Safley, 107 S.Ct. at 2262.

In sum, to find a Free Exercise violation in the prison context, a plaintiff must demonstrate that prison officials employed a policy or engaged in conduct not reasonably related to any legitimate penological interest or security measure, which substantially burdens a practice of his religion or prevents him from engaging in conduct or having a religious experience which the faith mandates.  This interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs.  See Thornburgh v. Abbott, 490 U.S. 401, 418, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459 (1989).

Here, despite the disjointed nature of Plaintiff's allegations, it seems clear that Plaintiff can state a Free Exercise claim against defendant Diaz.  Plaintiff clearly alleges that he is sincere in his Catholic beliefs.  In addition, Plaintiff alleges that defendant Diaz was the Director of Chaplaincy Services at Dade CI, and was the one that was responsible for and directly involved with having Plaintiff put on the call out list and seeing to it that Plaintiff could attend services, as well as being responsible for posting the religious calendars and arranging for Plaintiff to attend religious events.  Plaintiff also alleges that

19

defendant Diaz, *inter alia*, withheld Plaintiff's name from the call out list on a regular basis, personally denied Plaintiff access to religious materials, personally denied Plaintiff attendance at specific religious events, personally failed to post the religious calendars, and could see through a large window in her office that Plaintiff was not being taken to religious services.  Moreover, Plaintiff alleges that, as a result, he was systematically denied the ability to attend group worship, attend religious services, celebrate religious holidays, obtain spiritual advice, and maintain custody of religious publications.  These allegations are sufficient to state a claim against defendant Diaz, even taking into account that Plaintiff was in the TCU.

With regard to defendant Martin, Plaintiff first alleges that Martin was in control of all security over TCU, and that her staff was required to report to her regarding inmate requests to attend services.  It is true that, as set forth above, supervisory liability generally does not attach under § 1983.  See Miller, 84 F.3d at 1261.  However, here Plaintiff has alleged that defendant Martin was personally aware of the problems with Plaintiff's requests to practice his religion for a period of years, including through personal visits.  He further alleges that she was aware of his countless grievances and even screened many of them, and that she repeatedly told Plaintiff that she would look into his situation.  Moreover, Plaintiff also alleges that, despite this knowledge and despite repeated promises that the issue would be corrected (including, apparently, in grievance responses), that defendant Martin turned a "blind-eye" approach and allowed her subordinates to continue the *status quo* with the intent of not providing Plaintiff with adequate access to religious services, and took no action to correct the deprivation.  This is sufficient to state a First Amendment claim against defendant Martin based on a theory of supervisory liability.  See Miller, 384 F.3d at 1261

20

(requisite causal connection for § 1983 supervisory liability claim may be established, *inter alia*, through a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so, or when facts support an inference that the supervisor knew that the subordinates would act unlawfully and failed to stop them from doing so).[6]

With regard to defendant Williams, Plaintiff makes the same sort of allegations he makes against defendant Martin; that is, that in addition to being in a supervisory role over Martin and Diaz, that Williams was personally aware of Plaintiff's situation, not only through having received numerous grievances, but also because Plaintiff personally told Williams what was happening when Williams made weekly rounds in the TCU.  Plaintiff also makes a variety of specific allegations about Williams personally participating in denying Plaintiff access to certain religious publications, and in denying Plaintiff attendance at ceratin religious events that were "in tenet with" his religion on file. Thus, as with Martin, this is sufficient to state a claim against defendant Williams for a violation of Plaintiff's First Amendment Rights.  See  Miller, 384 F.3d at 1261.

*Conspiracy*

To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or

---

[6]The Court is cognizant that, as a general matter, the filing a grievance with a supervisor does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989) aff'd, 915 F.2d 1574 (6th Cir. 1990); Edler v. Schwarz, 2010 WL 3211941 at *5 (N.D. Fla. May 13, 2010).  However, as set forth above, in this case Plaintiff has alleged much more than that defendant Martin was simply put on notice of the alleged constitutional violations through the filing of a grievance.

agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights.  <u>See</u> <u>Hadley v.</u> <u>Gutierrez</u>, 526 F.3d 1324, 1332 (11th Cir.2008).  A plaintiff "must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy."  <u>Bailey v. Board of County Commissioners</u> <u>of Alachua County, Fla.</u>, 956 F.2d 1112, 1122 (11th Cir.1992) (internal quotations omitted).  The linchpin for a conspiracy claim is the agreement between the parties, and where the complaint fails to allege this agreement, the complaint is deficient and should be dismissed.  <u>See</u> <u>McKenzie v. Doctors' Hosp. of Hollywood, Inc.</u>, 765 F. Supp. 1504, 1507 (S.D. Fla. 1991), *aff'd sub nom*. <u>McKenzie v.</u> <u>Doctors' Hosp.</u>, 974 F.2d 1347 (11th Cir. 1992); <u>see also</u> <u>Bailey</u>, 956 F.2d at 1122.

The Eleventh Circuit has stated that, in actions alleging civil rights conspiracies, vague and conclusory allegations will not suffice:

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. [citations omitted]. In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. [citations omitted]. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of the conspiracy. [citations omitted].

<u>Fullman v. Graddick</u>, 739 F.2d 553, 556–557 (11th Cir.1984).

Here, Plaintiff's complaint is replete with repetitive, conclusory allegations of conspiracy.  Yet Plaintiff offers no specific facts that would state a claim for conspiracy, at least none that can be gleaned from his disjointed allegations.

Plaintiff simply alleges what each defendant did in their respective job, and that the three defendants had to meet on occasion as part of their jobs to discuss various matters. Plaintiff does not, however, plead any specific facts that would support an inference that these defendants reached any understanding to violate Plaintiff's constitutional rights. Rather, he simply recites in conclusory fashion and uses legal jargon to claim that a conspiracy existed. This is insufficient to state a claim for conspiracy. See Fullman, 739 F.2d at 556-557. Moreover, Plaintiff was already specifically advised of this by the undersigned's report recommending that Plaintiff be ordered to amend (See DE#56), and has failed to cure this pleading deficiency. As such, not only does Plaintiff fail to state any claim for conspiracy, he should not be granted any further leave to amend to attempt to do so. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)(factors counseling against include, inter alia, failure to cure deficiencies by amendments previously allowed).

*Retaliation*

To state a First Amendment claim for retaliation, the inmate must allege that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action ... and the protected speech...." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir.2008). "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." Moton v. Cowart, 631 F .3d 1337, 1341 (11th Cir.2011) (*citing* Mosley at 1278).

23

A prisoner-plaintiff in a retaliation case must allege a causal link between the protected activity and the adverse treatment. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir.1986); Jackson v. Fair, 846 F.2d 811, 820 (1st Cir.1988); Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir.1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). For instance, the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation. Gayle v. Gonyea, 313 F.3d 677, 683-84 (2nd Cir.2002). However, plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation. Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 750 (1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury ..." Crawford-El, 118 S.Ct. at 1596-97; Harris, 65 F.3d at 916-17; see also Colon v. Coughlin, 58 F.3d 865, 872 (2nd Cir.1995) (Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

There can be no dispute that both Plaintiff's desire to exercise his religion and his filing of grievances both constitute protected speech.  See Roberts v. United States Jaycees, 468 U.S. 609, 617 (1984))(the First Amendment protects, inter alia, the exercise of religion); Mosley, 532 F3d at 1277 (filing of grievances amounts to protected speech).  The problem is that Plaintiff's disjointed, repetitive and conclusory assertions fail to set forth any coherent timeline or other specific facts that would establish causation.  And, again, Plaintiff was specifically

advised of this by the undersigned's report recommending that Plaintiff be ordered to amend, (See DE#56) and has similarly failed to cure this pleading deficiency. As such, Plaintiff fails to state any claim for retaliation, and should not be granted any further leave to amend to attempt to do so. See Foman, 371 U.S. 178.

*Due Process*

"The touchstone of Due Process is freedom from arbitrary governmental action, but prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (internal quotation omitted).

An inmate can only claim a due process violation if the liberty interest he has lost is one of real substance. Sandin v. Conner, 515 U.S. 472, 478 (1995). Liberty interests grounded in the due process clause can only be created under certain limited circumstances. Since Sandin, only two instances exist where a prisoner can claim a protected liberty interest under the due process clause. Id. at 484. The first is when the prison's actions have the effect of altering his term of imprisonment, since any action that lengthens an inmate's sentence raises due process concerns. The second is where the prison's restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Here, Plaintiff's loss of his earbuds simply cannot rise to the level of a protected liberty interest. And once again, Plaintiff was specifically advised of this by the undersigned's report recommending that Plaintiff be ordered to amend. (See DE#56). Yet Plaintiff continues his futile attempt to state a due process claim based, upon the alleged seizure of this

25

earbuds. As such, Plaintiff fails to state any due process claim, and should not be granted any further leave to amend to attempt to do so.  See Foman, 371 U.S. 178 (factors counseling against granting leave to amend also include futility of amendment).

*Eighth Amendment*

Plaintiff alleges that Defendants did not provide him with uniform changes as required, allegedly in retaliation for filing grievances against them, and in furtherance of the alleged conspiracy to deny him his First Amendment right to free exercise of his religion.  Plaintiff fails to state any retaliation or conspiracy claims for the reasons previously set forth in this report.  However, in an abundance of caution, to the extent that Plaintiff's allegations regarding the dirty uniforms could be liberally construed as an attempt to raise an Eighth Amendment claim, the Court addresses the issue.  See Haines, 404 U.S. at 520-521 (pro se filings should be liberally construed); see also Graham v. Henderson, 89 F.3d 75, 79 (2nd Cir. 1996)(when read liberally, a pro se pleadings "should be interpreted 'to raise the strongest arguments that [it] suggest[s].'")(*quoting* Burgos v. Hopkins, 14 F.3d 787, 790 (2nd Cir. 1994)(habeas context).

Hamm v. DeKalb County, 774 F.2d 1567, 1571-1574 (11th Cir. 1985).  However, the standards applied to such claims are the same as those applied to Eighth Amendment claims by convicted inmates. See Bell, 441 U.S. at 535 (1979); Hamm, 774 F.2d at 1574 (with respect to allegations involving the "basic necessities of life, the fourteenth amendment rights of detainees can be defined by reference to the eighth amendment rights of convicted inmates").

The constitutional guarantee against cruel and unusual punishment prohibits punishments that "shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency or are grossly disproportionate to the offense

26

for which they are imposed." <u>Hamm</u>, 774 F.2d at 1571 (citations omitted); <u>see also</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)(conditions of penal confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment"). Whether conditions of confinement are cruel and unusual must be determined "'from the evolving standards of decency that mark the progress of a maturing society.'" <u>Rhodes</u>, 452 U.S. at 346, (<u>quoting</u> <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). "To the extent that such conditions are restrictive and harsh, [but do not offend contemporary standards of decency] they are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u> at 347.

To prevail on an claim for cruel and unusual punishment under §1983, the plaintiff must prove: "1) a condition of confinement that inflicted unnecessary pain or suffering; 2) the defendant's deliberate indifference to that condition; and 3) causation." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993)(citations omitted). With regard to conditions of confinement, the Constitution does not "purport to regulate the general conditions and quality of life in the country's jails . . . courts should not get enmeshed in the minutiae of prison operations." <u>Hamm</u>, 774 F.2d at 1573. In the specific context of basic human needs, the inmates must be furnished with a "reasonably adequate diet and living space . . ." <u>Id.</u> at 1574. With regard to diet, "a well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required . . . the fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." <u>Id.</u> at 1575; <u>see also</u> <u>Jones v. Diamond</u>, 636 F.2d 1364, 1378 (5th Cir. 1981); <u>Smith v. Sullivan</u>, 553 F.2d 373, 380 (5th Cir. 1977). Food need only be

"prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." <u>Brown v. Detella</u>, 1995 U.S. Dist. LEXIS 13260.

The Constitution does not require prisoners be granted every amenity. The constitutional guarantee against cruel and unusual punishment is satisfied by providing prisoners with "reasonably adequate food, clothing shelter, sanitation, medical care and personal safety." <u>Newman v. Locke</u>, 559 F.2d 283, 291 (5th Cir. 1977); <u>see</u> <u>also</u> <u>Newman v. Alabama</u>, 559 F.2d 283, 286 (5th Cir. 1977)(prisoners need only be provided reasonably adequate food); <u>Ramos v. Lamm</u>, 639 F.2d 559, 570-71 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981)(food need only be prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it).

Here, Plaintiff alleges in only the vaguest of terms that he was not provided with regular uniform exchanges for various periods of time. He does not, however, allege that his health and safety were comprised in any way. Plaintiff's allegations are thus simply insufficient to state an Eighth Amendment violation. <u>See</u> <u>Myers v. Indiana Dep't of Correction</u>, 655 Fed.Appx. 500, 504 (7th Cir. 2016) (finding inmate's allegation that his clothes were not properly cleaned failed to state an Eighth Amendment claim for cruel and unusual punishment); <u>Gates v. Cook</u>, 376 F.3d 323, 342 (5th Cir.2004) (holding that prison laundry that required inmates to wash their own clothes with bar soap was not sufficiently serious to implicate the Eighth Amendment); <u>Metcalf v. Veita</u>, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); <u>Tapp v. Proto</u>, 718 F.Supp.2d 598, 619 (E.D.Pa.2010) (inmate forced to wear dirty, torn and stained undergarments during his confinement did not state a

constitutional violation); <u>Young v. Berks County Prison</u>, 940
F.Supp. 121, 123-24 (E.D.Pa 1996) (noting there was no Eighth
Amendment violation when inmate's clothing was occasionally dirty
or torn so long as his health was not imperiled); <u>Martin v. Lane</u>,
766 F.Supp. 641, 648 (N.D.Ill.1991) (deprivation of laundry
services and hygienic supplies for between three and eighteen days
did not constitute a violation of a prisoner's Eighth Amendment
rights); <u>McKnight v. Northern Nevada Correctional Center</u>, No.
3:09-cv-00757-LRH-VPC, 2010 WL 4005547, at *3 (D.Nev. Oct. 8, 2010)
(no Eighth Amendment violation when inmate allowed one set of
clothing for six months and prison then refused to replace new
clothing that was lost in laundry); <u>Jones v. Schouppe</u>, No. 06-1083,
2008 WL 163049, at * 4 (W.D.Pa. Jan. 15, 2008) (denial of new
clothing is at most inconvenience, discomfort or indignity
incidental to prison life, not a constitutional violation); <u>Miller
v. Brown</u>, No. 07-2020(JLL), 2007 WL 1876506, at * 4 (D.N.J. June
26, 2007) ("While any person's desire for spotless cleaning,
perfect washing facilities and weekly laundry service is
understandable, lack of such niceties cannot amount to a violation
of constitutional magnitude.").

*Grievances*

　　Plaintiff alleges that Defendants retaliated against him for
filing grievances. Plaintiff fails to state any retaliation claims
for the reasons previously set forth in this report. However, in
an abundance of caution, to the extent that Plaintiff's detailed
allegations regarding the FDOC's grievance procedures could be
liberally construed as an attempt to raise some sort of free-
standing grievance claim, the Court briefly addresses the issue.
<u>See Haines</u>, 404 U.S. at 520-521; <u>Graham</u>, 89 F.3d at 79.
　　Plaintiff makes a variety of allegations that all the
defendants, to varying degrees, either improperly handled, delayed,

29

or denied his grievances.  To the extent that Plaintiff may mean to claim that these acts amount to constitutional violations, it is well-settled that they do not.  See Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011).  That is because there is no constitutionally protected interest in a prison grievance procedure.  Id. ("[W]e agree with our sister circuits that a prison grievance procedure does not provide an inmate with a constitutionally protected interest.").  Plaintiff was also specifically advised of this by the undersigned's report recommending that Plaintiff be ordered to amend.  (See DE#56).  As such, not only does Plaintiff fails to state any free-standing "grievance claim," he should not be granted any further leave to amend to attempt to do so.  See Foman, 371 U.S. 178 (factors counseling against granting leave to amend also include futility of amendment).

*Access to Courts*

Plaintiff alleges that defendant Williams forced Plaintiff to choose between going to religious services and meeting with an inmate law clerk in support.  Plaintiff goes on to state that he choose to go to services, and further states that he missed deadlines in his then-pending previous case against defendant Williams and others.  Thus, to the extent that these allegations could be liberally construed as an attempt to raise a claim of denial of access to courts, the Court addresses the issue. See Haines, 404 U.S. at 520-521; Graham, 89 F.3d at 79.

Plaintiff's claim regarding legal assistance implicates the First Amendment's guarantee of the right to access the courts.  See Bounds v. Smith, 430 U.S. 827, 97 S.Ct. 1491. 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (reaffirming the long established principle that inmates have a fundamental constitutional right of meaningful access to the courts under the First Amendment), and

cases cited therein.   In <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court clarified that in presenting such a First Amendment claim, an inmate must allege "actual injury," because an inmate's First Amendment right is not an "abstract, freestanding right." <u>Id.</u> at 351.   Thus, an inmate must show actual injury in that the conduct complained of must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim, <u>Id.</u>, at 352-54, and the legal claim must be an appeal from a conviction for which the inmate was incarcerated, a habeas petition, or a civil rights action.   <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445 (11th Cir.1998), *citing* <u>Lewis</u>, 518 U.S. at 352-57; 116 S.Ct. at 2181-82.   The following three-part test applies for determining whether a denial of access to the courts has, in fact, caused actual injury under the Constitution:

> 1. The action must involve an attack to the prisoner's sentence, directly or collaterally, or challenge the conditions of his confinement;
>
> 2. The prisoner must show the claim to which he was impeded was not frivolous; and,
>
> 3. The conduct complained of must have impeded the inmate's capability to file the nonfrivolous action challenging his sentence or the conditions of his confinement.

See <u>Id</u> at 2181-83.

Here, the court presumes that the action Plaintiff means to refer to is his original case before Judge Huck that Plaintiff voluntarily dismissed, and further assumes for the sake of argument that the claim was not frivolous.   Then, Plaintiff must still show that he was impeded in the pursuit of that matter.   <u>See</u> <u>Id.</u>

As set forth above, a constitutional prerequisite to a claim of denial of access to the courts is that the complainant must have suffered an "actual injury."   <u>See</u> <u>Lewis</u>, 518 U.S. at 352-54.   The

Eleventh Circuit has noted that missing filing deadlines is an example of an actual injury. <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290 n.10 (11th Cir.1998). However, in <u>Hall v. Sec'y for the Dep't of Corr.</u>, 304 Fed. Appx. 848, 849-50 (11th Cir.2008) (unpublished),[7] the Eleventh Circuit affirmed the district court's dismissal of a complaint alleging that the plaintiff had been denied access to court because defendants misdirected his legal mail and he missed a filing deadline for a motion for rehearing in the state appellate court. The Court held that the district court did not err in finding that the plaintiff had not alleged an actual injury because the motion for rehearing sought discretionary relief and related to a motion to correct an illegal sentence that already had been considered on the merits. 304 Fed. Appx. at 850.

That rationale extends to Plaintiff's case. Setting aside that Plaintiff makes only the most conclusory of assertions that he missed several deadlines and fails to identify of any those deadlines or explain how or why the were dispositive to his case, Plaintiff is the one who voluntarily dismissed his action. Moreover, Plaintiff then refiled this action after he was released, and now has the opportunity to litigate his claims without any of the alleged interference from the defendants. Under these circumstances, Plaintiff cannot allege that he suffered any actual injury from any defendant's alleged interference with this access to courts, assuming *arguendo* that Plaintiff could state the remaining elements of such a claim. And once again, Plaintiff was advised of all of this by the undersigned's report recommending that Plaintiff be ordered to amend. (<u>See</u> DE#56). As such, not only does Plaintiff fails to state any access-to-courts claim, he should not be granted any further leave to amend to attempt to do so under the circumstances of this case. <u>See</u> <u>Foman</u>, 371 U.S. 178

---

[7] Pursuant to 11th Cir. Rule 36-2, unpublished opinions are not binding precedent but may be cited as persuasive authority.

(factors counseling against granting leave to amend also include
futility of amendment).

*Compensatory Damages*

The Plaintiff in a § 1983 civil rights action must show that
he or she suffered some actual injury as a result of the alleged
constitutional violation in order to be able to recover
compensatory damages. See Carey v. Piphus, 435 U.S. 247, 255, 98
S. Ct. 1042, 1048, 55 L. Ed. 2d 252 (1978); see also Hughes v.
Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are
appropriate if a plaintiff establishes a violation of a fundamental
constitutional right, even if he cannot prove actual injury
sufficient to entitle him to compensatory damages.") *citing* Carey,
435 U.S. at 255, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).  In the
absence of a showing of actual injury, however, a § 1983 plaintiff
may still recover nominal damages for a violation of his or her
constitutional rights.  See Id. at 267.

The PLRA limits the extent to which a prisoner-litigant may
recover damages for mental or emotional injuries suffered while in
custody.  Specifically, Title 42 U.S.C. § 1997e(e) provides that:

> No Federal civil action may be brought by a prisoner
> confined in a jail, prison, or other correctional
> facility, for mental or emotional injury suffered while
> in custody without a prior showing of physical injury or
> the commission of a sexual act.

42 U.S.C. § 1997e(e).  The Eleventh Circuit has determined that the
phrase "federal civil actions" means all federal claims, including
constitutional claims.  Napier v. Preslicka, 314 F.3d 528, 532
(11th Cir. 2000) (*citing* Harris v. Garner, 216 F.3d 970, 984–85
(11th Cir. 2000) (*en banc*).  Moreover, if the "injury" that the
Plaintiff complains of effectively amounts to the facts of the
constitutional violation itself, § 1997e(e) of the PLRA bars claims
brought by prisoners for compensatory damages for mental or

33

emotional injuries, absent a prior showing of physical injury or the commission of a sexual act. <u>See</u> <u>Harris v. Garner</u>, 190 F.3d 1279, 1282 (11th Cir.), *reh'g en banc granted, opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *and opinion reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000).

Therefore, absent actual injury, deprivations of due process rights, or rights under the First Amendment are actionable for nominal damages only. <u>See</u> <u>Carey</u>, 435 U.S., 266 (holding that deprivation of due process rights are actionable for nominal damages); <u>Pelphrey v. Cobb Cty., Ga.</u>, 547 F.3d 1263 (11th Cir. 2008) (holding that deprivation of First Amendment rights are actionable for nominal damages).

Here, Plaintiff makes no allegations of any physical injuries resulting from the alleged First Amendment violations. Rather, all that Plaintiff alleges are the facts of the claimed constitutional violations themselves, and the only injuries that he claims are mental and emotional. Under these circumstances, Plaintiff is limited to nominal damages. Moreover, Plaintiff was also specifically advised of this by the undersigned's report recommending that Plaintiff be ordered to amend (<u>See</u> DE#56), and has failed to cure this pleading deficiency. As such, Plaintiff fails to state any claim for compensatory damages, and should not be granted any further leave to amend to attempt to do so. <u>See</u> <u>Foman</u>, 371 U.S. 178 (factors counseling against granting leave to amend include failure to cure deficiencies by leave previously granted).

*Punitive Damages*

"Punitive damages are appropriate under § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others.' " <u>Wright v. Sheppard</u>, 919

F.2d 665, 670 (11th Cir.1990) (*quoting* <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).

Here, Plaintiff's disjointed allegations, although repetitive and emotionally charged, fail to state sufficient specific facts to support a punitive damage award. Moreover, Plaintiff was also specifically advised of this by the undersigned's report recommending that Plaintiff be ordered to amend (<u>See</u> DE#56), and has failed to cure this pleading deficiency. As such, Plaintiff fails to state any punitive damage claim, and should not be granted any further leave to amend to attempt to do so. <u>See</u> <u>Foman</u>, 371 U.S. 178 (factors counseling against granting leave to amend include failure to cure deficiencies by leave previously granted).

*Presumed Damages*

Plaintiff also seeks "presumed" damages, in the event that he is not able to recover either compensatory or punitive damages. However, consistent with the dictates of the Supreme Court regarding the necessity for actual damages in § 1983 cases, the Eleventh Circuit has held that § 1983 damages "cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated." <u>Slicker v. Jackson</u>, 215 F.3d 1225, 1229 (11th Cir. 2000).

<u>Conclusion</u>

Based on the foregoing, it is recommended that:

1.   Defendants' Diaz, Martin and Williams' Motion to Dismiss (DE#66) be DENIED;

2.   Plaintiff's First Amendment free exercise claims proceed against defendants Diaz, Martin and Williams in their individual capacities;

3.   Plaintiff's conspiracy claims be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

35

4.   Plaintiff's retaliation claims be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

5.   Plaintiff's due process claims be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

6.   Plaintiff's Eighth Amendment claims be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

7.   Plaintiff's grievance claims be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

8.   Plaintiff's access-to-courts claims be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

9.   Plaintiff's claims for compensatory damages be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

10.  Plaintiff's claims for punitive damages be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

11.  Plaintiff's claims for presumed damages be dismissed pursuant to 28 U.S.C. §1915A(b) for failure to state a claim upon which relief may be granted;

12.  Plaintiff's damages for his First Amendment free exercise claims against defendants Diaz, Martin and Williams in their individual capacities be limited to nominal damages only.

It is further recommended that Plaintiff not be granted any further leave to amend his complaint.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.  Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual

findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

It is so recommended at Miami, Florida, this 21st day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

Copy furnished:

Steven Joseph Maciejka
440 St. Charles Avenue
Merritt Island, FL 32953
PRO SE
Steven Joseph Maciejka
440 St. Charles Avenue
Merritt Island, FL 32953
PRO SE

Madeleine Quinn Mannello
Office of the Attorney General
General Civil Litigation
110 SE 6th Street, 10th Floor (Civil)
Fort Lauderdale, FL 33301